# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 11, 2000

## STATE OF TENNESSEE v. FREDDIE NORMENT, JR.

**Direct Appeal from the Circuit Court for Fayette County**
**No. 4705     Jon Kerry Blackwood, Judge**

———————

**No. W1999-01928-CCA-R3-CD - Filed October 23, 2000**

———————

The defendant was convicted of aggravated assault for wounding a jail cell mate with a homemade knife. On appeal, the defendant raises the following issues: whether the jury's verdict was supported by the evidence; whether the trial court erred in denying the defendant's motion to examine a potential witness outside the jury's presence; and whether the trial court erred in failing to issue curative jury instructions after the allegedly improper testimony of a prosecution witness. Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES, J., and CORNELIA A. CLARK, SP.J., joined.

Wayne T. DeWees, Bolivar, Tennessee, for the appellant, Freddie Norment, Jr.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Colin Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, an inmate at the Fayette County Jail, was convicted of aggravated assault for wounding a fellow inmate with a homemade knife. The trial court sentenced the defendant to seven years as a Range I, standard offender. After the denial of his motion for a new trial, the defendant filed a timely appeal to this court, presenting the following issues for review:

> I.      Whether the evidence was sufficient to support the jury's verdict;

II.    Whether the trial court erred in denying the defendant's motion to examine a potential witness outside the jury's presence; and

III.   Whether the trial court erred in failing to give a curative jury instruction in response to the allegedly improper remarks of a State witness.

Based upon our review, we affirm the judgment of the trial court.

## FACTS

On July 11, 1998, the defendant, Freddie Norment, Jr., was incarcerated in the Fayette County Jail in Somerville, Tennessee, where he was assigned to a cell that contained ten to twelve other inmates. On November 1, 1998, the defendant slashed one of his cellmates in the stomach with a knife that had been fashioned out of a razor blade melted onto the handle of a toothbrush. The victim was badly wounded, requiring over forty stitches. Subsequently, the Fayette County Grand Jury returned an indictment against the defendant, charging him with aggravated assault, in violation of Tennessee Code Annotated Section 39-13-102.

At trial, the victim, Mark Cole, testified that, after winning a "a couple of dollars" from the defendant during a poker game on the evening of October 31, 1998, he stopped by the defendant's bunk on November 1, 1998, to talk to him about the possibility of another game. The victim said that he partially pulled aside the curtain covering the defendant's bunk, where the defendant was lying, and asked, "Hey, man, you want to get your money back?" At that point, according to the victim:

> [H]e just went off on me. He got up first and hit me in my face about three times, and the next thing I know, he did like that right there, and cut me across my stomach. I looked down and I seen I was cut. I got up and went to the door and Mr. Jack McNabb came to the door and opened the door and let me out, and they took me to the hospital.

The victim testified that he had been unarmed, and that he had not threatened the defendant in any way.

On cross-examination, the victim denied that he and the defendant had fought prior to this incident, or that he had done anything to provoke the attack. The victim maintained that he had been unarmed, and stated that he had never had a razor blade during the time that he was incarcerated in the county jail.

The State presented the testimony of several inmates who were present in the cell on November 1, 1998. LaKendrick Sullivan testified that the defendant and the victim exchanged

"some words," about the victim "messing with" the defendant's curtains or bed. By Sullivan's account, the defendant then rose, walked over to the victim, who was sitting on the floor, put his finger on the victim's head and said, "You going to fix my curtains." The victim stood, and there was "like a little hustle," with "a couple of licks passed" between the men. Sullivan testified that he had not seen the actual wounding, but that at the end of the altercation both men were bleeding.

Harry Williams, who was approximately three feet away from the defendant and the victim when the attack occurred, testified that he saw the defendant rise from his bunk, start "whipping on" the victim, and "then he just cut [the victim] across the stomach." The victim did not have a weapon, and Williams did not see the victim threaten or push the defendant.

William Moody, who was approximately seven to ten feet away from the defendant and the victim, testified that he remembered the defendant and the victim "getting into it," and that the victim had been cut. Moody said that the victim did not have a weapon. He did not remember hearing the victim threaten the defendant.

The State sought to introduce the testimony of Ricky Wilson, investigator for the Fayette County Sheriff's Department, who had taken photographs of the victim's injury. Defense counsel made a motion that the witness first be examined outside the jury's presence "to determine the legality of whatever he's got to testify." The trial court overruled this motion.

Wilson testified that, as part of his investigation of the incident, he had taken photographs of the victim's wound on November 4, 1998. These photographs were introduced into evidence. Wilson said that he had also looked at the defendant's naked torso on November 4, 1998, and that he had not seen any bruises or cuts on the defendant.

Jack McNabb, the jailer on duty at the time the incident occurred, testified that he had not seen any blood or cuts on the defendant when he moved the defendant out of the cell at 5:40 p.m. on November 1, 1998, approximately twenty minutes after the victim was wounded.

The defendant, testifying on his own behalf, stated that the victim harassed him throughout the day on November 1, 1998. According to the defendant:

> He kept on picking with me, you know, holding my same curtain up that I told him–I asked him nice not to, you know. So, the next thing I know, he kept pulling my pillow and called me–you know, he was–we had been–like he said, we had been playing cards for money the night before. We had been playing cards all along, you know, for a little money, but then so the same time–at the same time he kept on asking me to come on and play cards with him and kept on just irritating me. Seemed like he wanted to pick a fight with me, you know. Seemed like that's what they moved him in the cell for, to

pick a fight–just to pick a fight with me. I don't know, you know.
'Cause they moved him from Cell One.

The defendant stated that when the victim continued "picking with" him after lunch, "[w]e had a couple of words and then we was standing face-to-face." When asked what words were exchanged, the defendant testified that:

Mark told me that he–Mark told me that he'd do something to me,
you know–he'd do something to me. And I took that as he–you
know, he'll do something to harm me. And I took that as harm.

According to the defendant, after he and the victim "pass[ed] words from each other" for a while, the victim shoved him, and he responded by shoving the victim. The defendant testified that "the next thing I know, he struck at me and I struck at him." The defendant said that the victim had a knife, and the victim cut him with that knife. The defendant raised his shirt to show where he had been cut, indicating that "there's a little cut right there."

On cross-examination, the defendant acknowledged that he had had a knife, and that he had cut the victim. He insisted, however, that the victim cut him first. The defendant said that he had bled "a lot" from his cut, and that those who testified that he had not been bleeding were lying.

Kevin Murrell, an inmate in the Fayette County Jail on November 1, 1998, testified that he saw the victim reach out towards the defendant first, and that the victim had a knife similar to the one that the defendant used to cut the victim. When asked if the defendant had been cut, Murrell answered "No–not–No–little." Asked to explain, Murrell said that the defendant had received a little scratch, but "not nothing deep or nothing."

The State presented the rebuttal testimony of Larry Cheairs, who had also been an inmate in the Fayette County Jail on November 1, 1998. Cheairs testified that he witnessed the defendant get up, hit the victim three or four times, and then cut him. He had not seen the victim with any kind of weapon.

After deliberation, the jury convicted the defendant of aggravated assault. The trial court sentenced him to seven years in the Tennessee Department of Correction.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first argues that the evidence does not support the jury's verdict. He asserts that the overwhelming proof at trial showed that the victim was armed with a knife, that the victim threatened the defendant with bodily harm, and that the victim provoked the fight which led to the victim first cutting the defendant, and the defendant then cutting the victim. The defendant contends

that he acted in self-defense, and that no rational trier of fact could have found him guilty of aggravated assault.

The State argues that the evidence was sufficient to support the jury's verdict. The State asserts that, viewed in the light most favorable to the State, the proof clearly showed that the defendant cut the victim with a knife, and that the victim was unarmed. The State argues that it was within the jury's discretion to credit accounts of the incident provided by State witnesses, while discrediting conflicting accounts offered by defense witnesses.

When the sufficiency of convicting evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App.), perm. app. denied (Tenn. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In this case, the trial court instructed the jury that, in order to find the defendant guilty of aggravated assault, they had to find beyond a reasonable doubt that the defendant knowingly and intentionally caused bodily injury to the victim, and that the defendant used or displayed a deadly weapon. The trial court also instructed the jury regarding the defendant's plea of self-defense, telling them if they found that the defendant acted in self-defense, or if they had a reasonable doubt

as to whether the defendant acted in self-defense, they must find the defendant not guilty. After deliberation, the jury found the defendant guilty of aggravated assault.[1]

Viewing the evidence in the light most favorable to the State, we find ample evidence in support of the jury's verdict. The victim's testimony that he had been unarmed, and that he had not threatened the defendant, was corroborated by the eyewitness accounts of inmates William Moody, Harry Williams, and Larry Cheairs. Additional support for the victim's version of the incident was provided by the testimony of Fayette County Sheriff's Department Investigator Ricky Wilson, who found no evidence of cuts or bruising on the defendant's body three days after the incident, and by the testimony of Fayette County Jailer Jack McNabb, who saw no cuts or blood on the defendant twenty minutes after the incident. The jury obviously found the testimony of these State witnesses more credible than that of the defendant and of inmate Kevin Murrell, who testified that the victim was armed with a knife, and that the victim struck the defendant first. We conclude that the evidence presented at trial was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of aggravated assault.

## II. Denial of Defendant's Motion for Jury-Out Hearing

The defendant next argues that the trial court erred in denying defense counsel's motion to hold a jury-out hearing to determine the admissibility of Investigator Ricky Wilson's testimony. The defendant contends that Wilson's testimony consisted of improper "prejudicial remarks," without specifying what these allegedly "prejudicial remarks" were. The defendant also argues that, since he stipulated to the victim's injury at the onset of trial, the photographs of the victim's injury introduced into evidence through Wilson's testimony were "redundant, irrelevant, and highly prejudicial." The State argues that the trial court did not abuse its discretion in this matter.

The admissibility of evidence generally lies within the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of that discretion. State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993); State v. Williams, 657 S.W.2d 405, 411-12 (Tenn. 1983); State v. Barnard, 899 S.W.2d 617, 624 (Tenn. Crim. App. 1994). As with other evidence, the admissibility of photographs also generally lies within the sound discretion of the trial court. State v. Hall, 8 S.W.3d 593, 601 (Tenn. 1999). Therefore, we will not disturb the trial court's decisions in these matters unless we find that it has abused its broad discretion. Id.; Williams, 657 S.W.2d at 411-12.

The defendant argues that the trial court erred in denying his motion to hold a jury-out hearing to determine the admissibility of Wilson's testimony. A jury-out hearing to determine the

---

[1] In his brief, the defendant has directed the court's attention to the "true man doctrine," codified at Tennessee Code Annotated Section 39-11-611. However, it does not appear that it was an issue as to whether the defendant had a duty to retreat, even assuming that would have been possible since the defendant and the victim were both confined in a cell with other inmates. Whether the "true man" rule applies to a case is determined by the jury, State v. Renner, 912 S.W.2d 701, 704 (Tenn. 1995), and it appears that the trial court properly instructed the jury as to self-defense, as Renner requires.

admissibility of proffered evidence is only mandated in certain limited circumstances. Rule 104(c) of the Tennessee Rules of Evidence states:

> Hearing of Jury.– Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. *Hearings on other preliminary matters shall be so conducted when the interests of justice require* or when an accused is a witness and so requests.

Tenn. R. Evid. 104(c) (emphasis added). Thus, unless the proffered evidence involves the admissibility of a confession or the testimony of the witness-accused, whether or not to hold a jury-out hearing to determine the admissibility of testimony or other evidence is within the trial court's discretion. See Tenn. R. Evid. 104(c), Advisory Commission Cmts.; see also State v. Kennedy, 7 S.W.3d 58, 68 (Tenn. Crim. App.), perm. app. denied (Tenn. 1999) (citing Neil P. Cohen et. al., Tennessee Law of Evidence, § 104.3)).

In making his motion for a jury-out hearing, defense counsel argued that Wilson's testimony could only consist of hearsay because he had not been present in the jail cell on November 1, 1998, when the incident occurred. After the State indicated that it was calling Wilson to testify regarding photographs he had taken of the victim's wound, the trial court denied the defendant's motion, and allowed Wilson to testify before the jury. This was clearly within the trial court's discretion.

The defendant contends that during his testimony before the jury, Wilson was allowed to make improper "prejudicial remarks." However, the defendant does not indicate what these "prejudicial remarks" were, and our review of the record has not uncovered any instance in which the trial court allowed improper testimony by Wilson. The record shows that Wilson twice began to testify about what prison employees had told him. Both times defense counsel raised an immediate hearsay objection, and both times the trial court sustained the objection. The only other objection to Wilson's testimony that defense counsel raised was when Wilson, asked if he had had a chance to observe the defendant after the incident, answered, "Yes, sir. I attempted to interview Mr. Norment – ." Defense counsel interrupted with an objection and, in a sidebar conference out of the jury's hearing, argued that the witness should not be allowed to testify as to whether or not the defendant made a statement about the incident. The trial court sustained the objection, and Wilson continued his testimony without further mention of the attempted interview. We conclude that the trial court made appropriate rulings on the objections raised, and that it did not abuse its discretion in allowing the witness to testify.

The defendant also argues that the trial court erred in allowing photographs of the victim's wound to be introduced into evidence. The defendant asserts that these photographs were "highly prejudicial" to his case, and should not have been allowed. The State argues that the photographs were relevant to show the injury that the defendant caused to the victim, and that their probative value was not outweighed by the danger of unfair prejudice. The State also argues that the defendant waived his right to raise this issue on appeal by his failure either to make a timely objection at trial to the introduction of this evidence, or to raise the issue in his motion for a new trial.

The defendant's failure to take any action to call an alleged error to the trial court's attention will ordinarily preclude review of the issue on appeal. See Tenn. R. App. P. 3(e); 36(a). We have reviewed this issue, nonetheless, and found no abuse of discretion by the trial court in allowing the photographs to come into evidence. The defendant apparently concedes the relevance of the evidence, but argues, under Tennessee Rule of Evidence 403, that the photographs' probative value was outweighed by the unfair prejudice that they created. We disagree. The photographs at issue consist of three slightly different views of the victim's torso, showing the cleaned and sutured wound. There is nothing gruesome or disturbing about these photographs. As such, we cannot find that their probative value was outweighed by the danger of unfair prejudice.

## III.  Jury Instructions

The final issue that the defendant raises on appeal is whether the trial court erred in failing to issue curative jury instructions after the testimony of Fayette County Jailer Jack McNabb. The defendant contends that McNabb was improperly allowed to testify that when he moved the defendant out of the cell, the defendant said, "You're not moving me nowhere. You can send all the officers you want to back here. I'm not leaving this cell." The defendant asserts that the trial court committed reversible error "in not making curative instructions to the jury after such inflammatory and prejudicial remarks."

The State argues that the trial court did not err in failing to issue curative jury instructions. The State contends that the defendant, by his failure either to object or to request a curative jury instruction at the time the testimony was offered, waived the right to object to the testimony on appeal. The defendant acknowledges his failure to object to the testimony or to request a curative jury instruction at trial, but requests, nevertheless, that this court review the issue, arguing that his substantial rights were compromised by the trial court's failure to issue a curative jury instruction.

This court, in its discretion, may take notice of an error which affects a substantial right of the defendant where it may be necessary to do substantial justice. Tenn. R. Crim. P. 52(b). This is not such a case. Therefore, we find this issue to be without merit.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the defendant's conviction for aggravated assault.

_____
ALAN E. GLENN, JUDGE